**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**JON C. BANTY,**

      **Plaintiff,**

                       **Case No. 09-C-0963**

  -vs-

**DINGS CO. MAGNETICS GROUP,**

      **Defendant.**

---

**DECISION AND ORDER**

---

    This matter comes before the Court upon the motion of the Defendant, Dings Co. Magnetics Group ("Dings"), for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Dings seeks dismissal of the claims of the pro se Plaintiff, Jon C. Banty ("Banty"), pursuant to 42 U.S.C. §§ 2000e-2(a) and 3(a), alleging racial discrimination and retaliation.

    Specifically, Banty claims that Dings, his former employer, discriminated against him in the workplace and terminated his employment based on his race. Additionally, Banty claims that Dings retaliated against him by terminating his employment for filing a discrimination complaint with the State of Wisconsin Department of Workforce Development's Equal Rights Division ("ERD"). In support of summary judgment motion, Dings maintains, *inter alia*, that Banty cannot establish a *prima facie* ("at first view") case of discrimination and that Dings had legitimate non-discriminatory, non-retaliatory reasons for its decision to terminate Banty's employment. Banty filed three-page response to Dings's

summary judgment submissions. His response is numbered in accordance with Dings's proposed findings of fact and purports to contest some of those findings. However, since Banty's response is not accompanied by any affidavits or other evidentiary material, as will be further explained, it is insufficient to controvert Dings's proposed findings.

**Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "a party may move for summary judgment, identifying each claim . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a). A court reviewing a motion for summary judgment must view the facts and make all reasonable inferences that flow from them in the light most favorable to the non-moving party. *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Put another way, summary judgment is appropriate when there are no genuine factual issues that could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250-51 (1986).

A plaintiff may prove a Title VII of discrimination or retaliation claim either directly or indirectly. *Silverman v. Board of Educ. of City of Chi.*, 637 F.3d 729, 733-34 (7th Cir. 2011). To avoid summary judgment under the direct approach, the plaintiff must

produce sufficient evidence, either direct or circumstantial, to create a triable question of intentional discrimination in the employer's decision. *Id*. A plaintiff also may proceed under the indirect, burden-shifting method of *Donnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Although the moving party bears the initial burden of informing the Court of the basis for its motion, it may satisfy its burden by simply showing or pointing out to the Court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 325. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to withstand summary judgment. *See Anderson*, 477 U.S. at 252.

**Factual Background**[1]

Dings is an independently operated, wholly owned subsidiary of Venturedyne Ltd., with its principal place of business at 4740 W. Electric Avenue, Milwaukee, Wisconsin. Dings manufactures spring-set, electronically-released disc brakes for use with industrial motors. On or about January 27, 2007, Dings hired Banty as a temporary employee.

On April 2, 2007, James Stark ("Stark"), the manufacturing manager at Dings, decided to hire Banty as a regular, full-time machinist. Banty's duties as a machinist included: setting up, adjusting, and operating a variety of machines; diagnosing and rectifying tooling problems; working from drawings, specifications, and job layouts; and,

---

[1] Unless otherwise stated, the factual background is taken from Dings's proposed findings of fact which Banty has not properly contested. However, even though they are undisputed, quoted statements will be accompanied by citations to the underlying factual material.

verifying that parts were produced within print specifications and tolerances.

Throughout his employment with Dings, Banty received numerous conduct and performance-related warnings including the following: (1) On March 13, 2008, Banty received a documented verbal warning for excessive scrap and rework; (2) On March 31, 2008, Banty received a verbal warning for allowing a machine coolant reservoir to overflow; and, (3) On September 8, 2008, Banty received a verbal warning about issues including productivity and absence from his work station. Additionally, on this same date, a sign was found at Banty's work station that stated "IF IM NOT HERE 1. go tell Stark 2. go see Billy 3. Then g#F@y*s!," (Banty Dep. Ex. 4; Banty Dep. 41; Stark Decl. ¶ 8.), and Banty was disciplined for creating the sign; (4) On October 2, 2008, Banty received a verbal warning for closing his eyes with his chin in his hands and elbows on his workstation for an extended period of time; and, (5) On October 7, 2008, Banty received a written verbal warning explaining to him that between October 11, 2007, and the warning date, he had been absent 15 times in violation of "plant rules group C # 1." (Banty Dep. Ex. 6.)

On October 14, 2008, Banty filed a discrimination complaint against Dings with the ERD,[2] which was assigned Case No. 200803382, claiming that he was discriminated against on the basis of race. In particular, Banty claimed he was held to "different standards" than his coworkers. (Banty Dep. Ex. 15; Banty Dep. 82.) Banty alleged that he was disciplined on August 6, 2008, for leaving his machine to use the bathroom; on September

---

[2] In Wisconsin, a plaintiff alleging discrimination under Title VII must first file a complaint with either the Equal Employment Opportunity Commission ("EEOC") or the ERD within 300 days of the alleged discriminatory conduct. *Miller v. Am. Family Ins.*, 203 F.3d 997, 1002 n.3 (7th Cir. 2000).

-4-

8, 2008, he was disciplined for posting a sign, and on October 4, 2008, he was disciplined for attendance.

On November 10, 2008, Banty was suspended for failing to return set-up sheets to his manager. Thereafter, on November 12, 2008, Banty received a follow-up written warning pertaining to his suspension for failing to return set-up sheets.

On January 12, 2009, Banty received a written warning for producing 20 defective pieces of scrap, and he was warned for failing to add tapping oil to drill-taps as directed, and failing to comply with Stark's instructions to place unfinished parts on the left side of the machine and finished parts on its right side.

On January 12, 2009, Banty filed a second discrimination complaint against Dings with the ERD, which was assigned Case No. 200900168, alleging that he was discriminated against on the basis of race, color, and sex, and that he was retaliated against for filing his October 14, 2008, ERD complaint.

On January 26, 2009,[3] Banty produced 20 additional defective pieces of scrap and he was suspended for three days for "production or concealing defective work through carelessness or negligence." (Banty Dep. 71:2-19, Banty Dep. Ex. 11; Stark Decl. ¶ 15.)

On April 29, 2009, Banty admitted that he had manufactured 150 incorrect pieces related to a work order on April 9, 2009. He was sent home on April 30, 2009, pending investigation.

---

[3] Banty Deposition Exhibit 11 specifies a January **28**, 2009, date for the infraction. However, paragraph 18 of Dings's proposed finding of fact, which Banty has not refuted, provides a January **26**, 2009, date as does paragraph 15 of the Stark Declaration. Therefore, the Court has used the latter date.

On May 22, 2009, Dings terminated Banty's employment as a result of numerous performance problems and other issues that had occurred. Dings offered Banty a "Last Chance Agreement" to remain employed under specific work conditions. Banty did not accept the offer and neither he nor anyone from his union asked any questions related to the "Last Chance Agreement." Stark asserts that his decisions to discipline and ultimately terminate Banty were not motivated by race or by Banty's ERD complaints.

On September 29, 2009, Banty filed a third charge of discrimination against Dings with the ERD, which was assigned Case No. 200903205. Banty alleged that Dings retaliated against him for filing his January 12, 2009, ERD complaint.

Banty received three warnings in the span of three months for careless or negligent work. Banty could not identify any other Dings employee who had received three warnings in the span of three months for careless or negligent work. Dings's termination letter specifically references these three warnings as the basis for terminating Banty's employment.

On June 26, 2009, Banty filed a charge against Dings under the National Labor Relations Act ("NLRA"), which was assigned Case No. 30-CA-18366 by the National Labor Relations Board ("NLRB"). Banty alleged that he was suspended from work on January 30, 2009, and May 1, 2009, and that his employment was subsequently terminated on May 22, 2009, "because of his union and-/or protected concerted activities." (Banty Dep. Ex. 19; Banty Dep. 111.) Banty testified that his June 26, 2009, NLRB charge was accurate. On

June 26, 2009, Banty also filed with the NRLB a duty of fair representation claim against his union.

On January 8, 2009, the ERD dismissed Banty's October 14, 2008, ERD complaint, with a finding of no probable cause. Thereafter, on March 24, 2010, the EEOC also dismissed the claims Banty brought in his October 14, 2008, ERD complaint, cross-filed as EEOC Charge No. 26G200900100.

On May 1, 2009, the ERD dismissed Banty's January 12, 2009, ERD complaint with a finding of no probable cause. On July 9, 2009, the EEOC also dismissed the claims Banty brought in his January 12, 2009, ERD complaint, cross-filed as EEOC Charge No. 26G200900587.

On December 17, 2009, the ERD dismissed Banty's September 29, 2009, ERD complaint, with a finding of no probable cause. On March 24, 2010, the EEOC also dismissed the claims Banty brought in his September 29, 2009, ERD complaint, cross-filed as EEOC Charge No. 26G201000006.[4]

On December 16, 2009, the NLRB dismissed Banty's June 26, 2009, NLRA charge.

Banty filed union grievances against Dings challenging his discipline and termination. Dings denied those grievances.

---

[4]Paragraph 69 of Dings's proposed findings of fact, upon which the statement is based, lists the date of the ERD complaint as December 17, 2009 — the date of the ERD's dismissal of the complaint, not its filing date. The Court has corrected the error.

-7-

The union took two of Banty's grievances to arbitration. One of those grievances was in regard to Banty's November 2008, suspension for removing notes from Dings's premises after being directed not to do so by Stark. Banty lost that grievance at arbitration. The arbitrator in the November 2008 suspension grievance specifically found that Banty failed to comply with a work directive when he failed to turn over his notes, and that to the extent Banty thought he did not have to turn over his notes, Banty was wrong.

The second grievance, in regard to Banty's termination, was withdrawn by Banty and the union after Dings presented Stark as a witness. Banty agreed that the withdrawal of his termination grievance essentially conceded that there was just cause for the termination of his employment.

On April 30, 2007, Banty received Dings's Plant Rules. (Banty Dep. Exs. 28 and 29; Banty Dep. 118; Stark Decl. ¶ 18.) The Plant Rules identify Group A, B and C violations, which call for varying degrees of discipline. Group C violations start with an oral reprimand, and include excessive absence from work, absence from the work area and inefficiency in work performance. Banty was disciplined by Dings for excessive absence from work, absence from his work area, and inefficiency in work performance.

Group B violations call for a three-day suspension and then termination. Group B violations include careless waste of materials, abuse of tools and equipment, and producing defective work through carelessness and negligence. Banty was reprimanded by Dings for producing defective work through carelessness and negligence on four occasions.

Banty was not suspended until the third time that he produced defective work through carelessness or negligence.

Group A violations call for immediate termination. Group A violations include insubordination and/or failure to carry out direct orders from a supervisor or management. Banty was suspended for failure to carry out a direct order from Stark, but Banty's employment could have been terminated.

Banty was hired by Stark. Stark was the individual who disciplined and ultimately terminated Banty's employment with Dings.

Banty admits that there are no documents he can identify that indicate that his race was a factor in Dings's decision to discipline or terminate his employment. Banty described himself in pleadings to the Court as an incompetent machinist. (Banty Dep. 132; Kunschke Decl. ¶ 4 & Ex. 3.)

**Analysis**

With respect to Banty's racial discrimination and retaliation claims, Title VII provides, in part, that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or . . . to discriminate against any individual with respect to his . . . race, color, [or] sex . . ." 42 U.S.C. § 2000e-2(a). Further, "[i]t shall be an unlawful employment practice for an employer to discriminate against any . . . employee[] . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

As previously noted a plaintiff may prove a Title VII claim either – directly or indirectly. *Silverman*, 637 F.3d at 733-34. "To succeed under the direct method, [Banty] must offer either direct evidence that would prove the fact in question—the discriminatory intent—without reliance on inference or presumption, *Venturelli v. ARC Community Services, Inc.*, 350 F.3d 592, 599 (7th Cir. 2003), or 'a convincing mosaic' of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Silverman*, 637 F.3d at 733-34 (citing *Coffman v. Indianapolis Fire Dep't*, 578 F.3d 559, 563 (7th Cir. 2009) (quoting *Phelan v. Cook County*, 463 F.3d 773, 779 (7th Cir. 2006)). The focus of the direct method is whether the evidence "points directly to a discriminatory reason for the employer's action." *Id.* at 734 n.3 (quoting *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008)). "Once a plaintiff produces such evidence, the defendant's summary judgment motion necessarily must fail, in contrast to the burden-shifting approach of the indirect, *McDonnell Douglas* method." *Id*.

A plaintiff using the "convincing mosaic" approach to prove a discrimination claim under the direct method may present any of three broad types of circumstantial evidence. *Silverman*, 637 F.3d at 734. The first type of includes evidence of "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Id*. (quoting *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)). The second type is evidence showing that the employer "systematically treated other, similarly situated, non[black] employees better." *Id*. (quoting

-10-

*Venturelli*, 350 F.3d at 601). Finally, the third type of circumstantial evidence is evidence that the plaintiff suffered an adverse employment action and that the employer's justification is pretextual. *Id*. Banty has no direct evidence of intent to discriminate against him on the basis of race, so he relies on the indirect approach.

## Racial Discrimination Claim

Under the indirect method, to proceed on a Title VII racial-discrimination-in-the-workplace claim, Banty bears the burden of establishing a *prima facie* case of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802. Banty may establish such a case by showing that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was meeting his employer's legitimate performance expectations; and (4) his employer treated similarly situated employees who were not in the protected class more favorably. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 897 (7th Cir. 2003). To defeat a summary judgment motion, Banty need only establish that a genuine issue of material fact exists regarding these factors. *Stalter v. Wal-Mart Stores, Inc.*, 195 F.3d 285, 289 (7th Cir. 1999).

It is undisputed that Banty, being black, belongs to a protected class under 42 U.S.C. § 2000e-2(a)(1), and that he suffered an adverse employment action when his employment was terminated. However, Banty is unable to show that he was meeting Dings's legitimate performance expectations. Banty received numerous written and verbal warnings relating to incorrect work orders, performance and attendance issues, and failing to follow

his supervisor's instructions. These warnings indicate that his performance did not meet Dings's expectations. Banty, therefore, fails to make a showing that he satisfies prong three.

Further, Banty fails to make a showing that he and other like situated employees, were treated less favorably than employees who are not in the same protected class. Banty conceded that he was the only one – out of the employees at Dings – who was treated less favorably. (Banty Dep. 83:11-13, 84:17-25). Thus, Banty implicitly concedes that, except for himself, both white and black employees were treated equally.

In addition, even if Banty were found to have established a *prima facie* case, Dings has presented a legitimate non-discriminatory reason for terminating Banty's employment because of repeated performance problems and numerous other issues that arose. Notably, Banty was also offered a "Last Chance Agreement" to remain employed under specific work conditions. However, he did not accept the offer or make any inquiries regarding that offer.

Although Banty disagrees with Dings's assessment of his performance, such a disagreement is not sufficient to preclude summary judgment. *See Silverman*, 637 F.3d at 738 (noting that "when an employer articulates a plausible, legal reason for discharging the plaintiff, 'it is not our province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.'" *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 411 (7th Cir. 1997); *accord, e.g., Stockwell v. City of Harvey*, 597 F.3d 895, 902 (7th Cir. 2010) (noting that subjective evaluations of job candidates are consistent with Title VII); *Stephens v. Erickson*, 569 F.3d

779, 788 (7th Cir. 2009) (recognizing that the role of the court is not to second-guess employers' business judgments); *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 697 (7th Cir. 2006) ("We do not sit as a super-personnel department with authority to review an employer's business decision") (quoting *Ballance v. City of Springfield*, 424 F.3d 614, 621 (7th Cir. 2005))).

Nevertheless, as noted in *Silverman*, 637 F.3d at 738, "an employer's negative evaluation of the plaintiff's performance is not always the last word. If the plaintiff can raise a genuine issue about the honesty, not merely the accuracy, of the employer's stated evaluation, the case may need to be tried." An employee "may demonstrate that the employer's reasons are unworthy of credence through evidence showing (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." *Id*. (citations omitted).

In this instance, Banty states that he believes that he is a fairly decent machinist. (*See* Banty's Summ. J. Resp. 3 [unnumbered].) However, he has not provided any evidence beyond his disagreement with the warnings to indicate that Dings did not in fact base its decision to terminate his employment based on those warnings as it contends. *See id*. "An employer can fire an employee for any reason, fair or unfair, so long as the decision to terminate is not based on age or some other protected category." *Id*. (quoting *Kier v. Commercial Union Ins. Cos.*, 808 F.2d 1254, 1259 (7th Cir. 1987)). Banty has

presented no evidence from which a reasonable jury could infer that Dings's reasons for discharging Banty are unworthy of credence.

In sum, Dings's motion for summary judgment is granted, since despite construing the evidence and the reasonable inferences from the evidence in the light most favorable to Banty, he has not presented sufficient evidence upon which a jury could reasonably find for him on his racial discrimination claim.

### Retaliation Claim

Banty also claims that Dings retaliated against him for filing a discrimination complaint with the ERD. Title VII prohibits an employer from taking an adverse employment action against an employee because he filed an employment discrimination charge. *See* 42 U.S.C. § 2000e–3(a); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006).

As with his discrimination claim, Banty may defeat a motion for summary judgment by providing sufficient evidence of retaliation through either a direct or indirect method. *See Weber v. Univs. Research Ass'n, Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). To avoid summary judgment under the direct method of proof for proving retaliation, a plaintiff must show: (1) that he engaged in a statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) there was a causal link between the two. *Jones v. Res–Care, Inc.*, 613 F.3d 665, 671 (7th Cir. 2010).

Banty satisfies the first element. Filing a charge with the ERD about the alleged discrimination is the most obvious form of statutorily protected activity. *See* 42

U.S.C. § 2000e-3(a); *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 677 (7th Cir. 2010). Furthermore, "[t]he quintessential example of an adverse action is a tangible employment action, such as the termination of the employment relationship." *Chapin*, 621 F.3d at 677. However, Banty must then offer "evidence that reasonably suggests" that his protected activity was related to Dings's decision. *See Lewis v. City of Chicago*, 496 F.3d 645, 655 (7th Cir. 2007) (quoting *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 758-59 (7th Cir. 2006)).

Banty has not presented evidence, as required by Fed. R. Civ. P. 56(c), that links his ERD complaints with the termination of his employment. Suspicious timing alone is rarely sufficient to defeat a motion for summary judgment. *See Cole v. Illinois*, 562 F.3d 812, 816 (7th Cir. 2009). "[M]ere temporal proximity is not enough to establish a genuine issue of material fact," *id.* (quoting *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008)).

Banty's employment was terminated seven months after he filed his initial discrimination complaint with the ERD and after he received five more written and verbal warnings. Although Banty filed a second discrimination complaint with the ERD on January 12, 2009, he was employed at Dings an additional four months following that complaint. Significantly, during the intervening four-month period Banty was disciplined on two separate occasions for producing defective products. The timing of the termination of Banty's employment in relation to the filing of his ERD complaints and his subsequent performance-related warnings is not "suspicious" and does not provide a basis upon which

-15-

a reasonable jury could infer that Dings terminated Banty's employment in retaliation for filing the ERD complaints. *See Silverman*, 637 F.3d at 734. Despite construing the evidence and the reasonable inferences from that evidence in the light most favorable to Banty, he has not presented evidence that reasonably suggests that the termination of his employment was related to the filing of his ERD complaints.

Since Banty has not presented any persuasive evidence of retaliation through the direct method, the Court considers Banty's retaliation claim under the indirect method. Banty must demonstrate two of the same elements required by the direct method: first, that he engaged in a statutorily protected activity and, second, that he suffered an adverse employment action. *Silverman*, 637 F.3d at 742.

As noted, Dings concedes that Banty has established these two elements as to the termination of his employment. The indirect method also requires Banty to show that he met Dings's legitimate expectations and that he was treated less favorably than similarly situated employees who did not engage in the statutorily protected activity. *Id*. If he establishes these elements, the burden shifts to Dings to produce a legitimate, non-retaliatory reason for terminating Banty's employment. If it succeeds in doing so, then Banty must come forward with evidence that Dings's proffered reasons were only a pretext for retaliating against him. *Id*.

The parties' positions with respect to whether Banty met Dings's legitimate expectations mirror their positions on the same issue as to his discrimination claims. Dings relies upon the numerous warnings given to Banty regarding deficiencies in his job

performance. Banty personally disputes the correctness of the warnings, but has not refuted the fact that the warnings were issued. As previously stated, Banty's assertions that the warnings were not warranted, unaccompanied by any other supporting evidence, are insufficient to create a factual dispute regarding the appropriateness of those warnings. *See Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 784 (7th Cir. 2007); *Rabinovitz v. Pena*, 89 F.3d 482, 487 (7th Cir. 1996); *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1460 (7th Cir. 1994); *Dale v. Chi. Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986) (stating the employee's perception of himself, however, is not relevant. It is the perception of the decisionmaker that is relevant.) Additionally, Banty has not presented evidence that Dings treated a similarly situated employee more favorably. Therefore, he has not presented sufficient evidence to establish a *prima facie* case under the indirect method. In light of the foregoing, Dings's motion for summary judgment is granted in its entirety.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Dings's motion for summary judgment dismissing Banty's Title VII (Docket No. 41) discrimination and retaliation claims is **GRANTED**.

This action is **DISMISSED** with prejudice.

The Clerk of Court is **DIRECTED** to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 30th day of August, 2011.

          **BY THE COURT**

          *s/ Rudolph T. Randa*
          **HON. RUDOLPH T. RANDA**
          **U.S. District Judge**